**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

SCOTT MICHAEL SHAFFER,

        Plaintiff,

v.                             CIVIL ACTION NO.   5:12-cv-00968

HSBC BANK NEVADA, NATIONAL
ASSOCIATION, and THE EASTPOINT
RECOVERY GROUP, INC.,

        Defendants.

**ORDER**

The Court has reviewed *Defendant HSBC Bank Nevada, N.A.'s Motion to Compel Arbitration and to Dismiss or Stay Case* (Document 4) together with Plaintiff's Complaint, Defendant's supporting memoranda, Plaintiff's response and all written submissions and exhibits relative thereto. The motion is now ripe for consideration.

**I.**

On December 14, 2011, Plaintiff, Scott Shaffer, filed this action in the Circuit Court of Raleigh County, West Virginia, against HSBC Bank USA, NA d/b/a/ HSBC Card Services, Inc. and The Eastpoint Recovery Group, Inc. ("Eastpoint"). In his initial Complaint, Plaintiff apparently incorrectly identified Defendant HSBC Bank Nevada, NA ("HBN") as HSBC Bank USA, NA, which is a separate and distinct entity from HBN. Therefore, on March 5, 2012, Plaintiff filed a Second Amended Complaint (Document 1 Ex. A) correctly identifying HBN as a Defendant.  Plaintiff's Second Amended Complaint contains ten counts based on phone calls made by the Defendants to collect a debt Plaintiff apparently owed to HBN. (Compl. ¶¶ 11-20). In

counts one (HBN) and six (Eastpoint), Plaintiff asserts claims for several violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"), W. Va. Code §§ 46A-1-1-2 *et seq.* (2012). Plaintiff alleges negligence claims, in counts two (HBN) and seven (Eastpoint).   In counts three (HBN) and eight (Eastpoint), Plaintiff asserts claims for intentional infliction of emotional distress, for invasion of privacy in counts four (HBN) and nine (Eastpoint), and violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2006) in counts five (HBN) and ten (Eastpoint).   On March 5, 2012, Plaintiff perfected service of the Second Amended Complaint on HBN. (Document 1 at 2.)   On April 4, 2012, HBN, with Eastpoint's consent, timely removed this action to this Court. (*Id*.)   Plaintiff does not challenge removal or jurisdiction.

On April 10, 2012, HBN filed its Motion to Compel Arbitration and to Dismiss or Stay Case, wherein HBN argues this Court should compel arbitration because the parties had a valid and enforceable agreement to arbitrate and the Plaintiff's claims fall within the substantive scope of the arbitration clause. (Document 5 at 1-3.)   On April 30, 2012, Plaintiff filed his response (Document 9).   He argues that the agreement is unenforceable and his claims are outside the scope of the arbitration clause.   HBN failed to file a reply.   The Court further elaborates on the parties' arguments in the discussion section below.

## II.

### A.  *General Arbitration Law*

The Federal Arbitration Act ("FAA") provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006). Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, ——U.S. ——, 131 S.Ct. 1740, 1745–46, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Also, the Supreme Court has held that there is a "fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ——, ——, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). "[C]ourts must put arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1746. (internal citation omitted.) Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

The party who seeks to compel arbitration must establish "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). Nevertheless, when determining the scope of a valid arbitration clause, a federal district court is to use the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24.).

A district court must "engage in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls

3

within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration,   and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). Furthermore, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt,* 489 U.S. at 479).

## B.  *Validity and Enforceability of Arbitration Clause*

The Court must first decide if, collectively, the Best Buy Credit Card Application ("Application") (Document 5 Ex. A) and the Amended Cardholder Agreement (Document 5 Ex. B) create a valid and enforceable contract under West Virginia law.   The burden is on HBN to demonstrate that a valid contract exists. *Mercury Constr. Corp.*, 656 F.2d at 939.   HBN contends that Plaintiff submitted the Application on or about August 18, 2007, when Plaintiff made a purchase at the Best Buy in Morgantown, West Virginia. (Document 5 at 2.)   HBN contends, as part of Plaintiff's application for a credit card account, he received a Cardholder Agreement and Disclosure Statement, which was subsequently amended on February 22, 2010.[1]  (*Id.*)

---

[1] The February 22, 2010 Amended Cardholder Agreement reads as follows: "You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future), including initial claims, counterclaims, crossclaims, and third-party claims, arising from or relating to: (a) this Agreement, the application, your Account, any transaction or activity involving any payment or failure to make payment on your Account, or any solicitation, advertisement, promotion, or oral or written statements related to this Agreement or your Account, (b) the relationships which result from this Agreement and your relationship with any Covered Person pursuant to the criteria in the immediately preceding subsection or (c) the scope, validity or enforceability of this arbitration clause, any part thereof or the entire Agreement (any of the forgoing a "Claim"), shall be resolved, upon election of you, us, or any other Covered Person described below, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedure of the arbitration administrator (the "Administrator") selected at the time the Claim is filed or   received by a party to the

4

The Application contains the following language:

By a) signing, using or permitting others to use this card; b) signing or permitting others to sign sales slips; c) making or permitting others to make purchases by telephone, Internet, or any other means, *you agree to the terms and conditions of the Cardholder Agreement and Disclosure Statement (which includes an arbitration provision) which shall be sent to you with the credit card.*

(Document 5 Ex. A. at 1) (emphasis added). HBN argues the Cardholder Agreement requires parties to arbitrate any controversy arising from the credit card account. (Document 5 at 3.)

In response, Plaintiff argues HBN "failed to attach[] [the] Cardholder Agreement and Disclosure Statement to its pleadings or produce a copy in this litigation." (Document 9 at 2.)   Plaintiff asserts that he did not receive the Notice of Change in Terms (Document 5 Ex. B), until it was served as an exhibit attached to HBN's instant motion.   He claims this denied him the opportunity to "opt out" of the arbitration clause. (*Id.*)   Plaintiff also argues that he did not use or permit the use of the Best Buy credit card subsequent to the February 22, 2010 amendment. (*Id.* at 11.)   Further, Plaintiff contends, to the best of his knowledge, he never used the card after the initial purchase on August 18, 2007. (*Id.*)

Plaintiff also argues that the arbitration clause is unconscionable because of the grossly unequal bargaining power between the parties; the terms were non-negotiable and weighed in favor of HBN; HBN unilaterally amended the rules governing arbitration without the input of, or notice to, Plaintiff; and HBN improperly held out American Arbitration Association as a forum for arbitration. (Document 9 at 5-14.)

HBN is required to meet its burden of proving that the parties entered into an agreement to arbitrate and that Plaintiff breached the agreement. *Mercury Constr. Corp.*,

---

Claim." (Document 5 Ex. B. at 3.)

656 F.2d at 939.   HBN has failed in this regard.   It is well established under contract law in West Virginia that "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent.   There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. Pt. 5, *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926)

The parties appear to have entered into some form of an agreement with respect to the extension of credit for a purchase at Best Buy on August 18, 2007.   HBN failed to produce the Original Cardholder Agreement allegedly sent to Plaintiff as a result of the August 18, 2007 Application. Plaintiff argues he never received this Cardholder Agreement nor used the credit card account subsequent to the date of initial purchase.   In the memorandum in support of its motion, HBN asserts that Plaintiff received the Cardholder Agreement and subsequent amendment, but fails to point to any evidence that Plaintiff, in fact, received either the original or amended agreement. (Document 5 at 3.) HBN's contends "Plaintiff's signatures appear on the application indicating his assent to all terms." Even if the original Cardholder Agreement had been produced, it is not clear from the record that the Cardholder Agreement, and the arbitration clause contained therein, would be enforceable. "[C]ourts must put arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1746.   Defendants cannot realistically expect the Court to enforce the provision referring to "terms and conditions of the Cardholder Agreement and Disclosure Statement (which includes an arbitration provision) which shall be sent to you with the credit card" when the

6

Plaintiff was not provided the terms of the arbitration provision at the time of the initial purchase and there is no evidence that he subsequently received or ratified its terms.   Put simply, there is no evidence that a "meeting of the minds" occurred with respect to the undisclosed terms of the arbitration clause.   Moreover, the Court cannot enforce an arbitration clause, the terms of which have not been provided to the Court.   Therefore, the Court finds HBN failed to meet its burden to show the parties had a valid and enforceable arbitration clause based on the Application and the Original Cardholder Agreement.

Additionally, HBN failed to meet its burden to establish that the parties entered a valid and enforceable contract as a result of the Application and the Amended Cardholder Agreement (Document 5 Ex. B).   The Amended Cardholder Agreement, which contains a comprehensive arbitration provision, apparently went into effect on February 22, 2010. (Document 5-2 at 2.)   HBN points to no evidence which disputes Plaintiff's contention that he neither received the Amended Cardholder Agreement nor implicitly accepted the terms through use of the card subsequent to February 22, 2010.   Importantly, given this lack of evidence, it appears Plaintiff was never given the opportunity to opt out of arbitration, as provided in the Amended Cardholder Agreement. (Document 5-2 at 5.) Clearly, an opt-out clause is meaningless if the Amended Cardholder Agreement was not received by Plaintiff.

Even assuming Plaintiff received the Amended Cardholder Agreement, there is no evidence that he signed anything beyond the initial Application nor is there any evidence he used or permitted others to use the card aside from August 18, 2007, the date of the Application and initial purchase.   HBN's argument, that Plaintiff's signature on the

original Application indicates he assented to the arbitration provision in the Amended Cardholder Agreement, cuts against all tenets of contract law. There is no evidence Plaintiff and Defendants mutually assented to the then undisclosed and non-existent Amended Cardholder Agreement when Plaintiff filled out the original Application. Consequently, HBN has not met its burden to demonstrate that a valid agreement to arbitrate exists under the Amended Cardholder Agreement inasmuch as it was derived from a Cardholder Agreement that lacked mutual assent as stated above. Accordingly, HBN's motion to compel arbitration must be denied.   In light of HBN's failure to meet its burden of proving that a valid agreement to arbitrate exists, the Court need not address whether the dispute falls within the scope of the purported arbitration clause contained in the Amended Cardholder Agreement.

## CONCLUSION

WHEREFORE, as discussed herein, the Court hereby **ORDERS** that *Defendant HSBC Bank Nevada, N.A.'s Motion to Compel Arbitration and to Dismiss or Stay Case* (Document 4) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        May 18, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA